IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NO. 5:02-CV-612-H(3)

| | |
|---|---|
| MARKER & ASSOCIATES, INC. and ANNE MARKER MCENTEE, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | **ANSWER AND COUNTERCLAIM** |
| J. ALLAN HALL & ASSOCIATES, INC., ) ) | |
| Defendant. ) | |

NOW COMES Defendant, J. Allan Hall & Associates, Inc. ("Defendant"), through its undersigned counsel, and responds to Plaintiffs', Marker & Associates, Inc. and Anne Marker McEntee's ("Plaintiffs") Complaint as follows:

### FIRST DEFENSE AND ANSWER

Defendant denies each and every allegation of Plaintiffs' Complaint not hereinafter admitted, modified or explained. Defendant responds to the specific numbered allegations of the Complaint, in corresponding numerical sequence, as follows:

1. Admitted upon information and belief.

2. Admitted that Defendant is a corporation with a principal place of business located in Indianapolis, Indiana. Except as admitted, the remaining allegations contained in paragraph 2 of the Complaint are denied.

3. Admitted that the Plaintiffs' Complaint contains allegations of breach of contract, constructive fraud and unfair and deceptive trade practices. Denied that Plaintiffs are entitled to any relief from Defendant.

4. Admitted.

5. Admitted.

6. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint and the same are, therefore, denied.

7. Denied.

8. Denied.

9. Denied.

10. Admitted.

11. It is admitted that Defendant has paid commissions to Plaintiffs. Except as admitted, the remaining allegations contained in paragraph 11 of the Complaint are denied.

12. Admitted

13. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and the same are, therefore, denied.

14. Admitted that Defendant paid Plaintiffs a commission of one percent (1%) beginning in January 2001. Except as admitted, the remaining allegations contained in paragraph 14 of the Complaint are denied.

15. Denied.

16. Denied.

### First Claim for Relief
### Breach of Contract

17. Defendants' responses to the allegations of paragraphs 1-16 above are realleged and incorporated herein by reference as if fully set forth.

18. Denied.

19. Denied.

20. Denied.

## Second Claim for Relief
## Constructive Fraud

21. Defendants' responses to the allegations of paragraphs 1-20 above are realleged and incorporated herein by reference as if fully set forth.

22. Denied.

23. Denied that Defendant engaged in any wrongful act as alleged in paragraph 23 of the Complaint. Except as denied, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 23 of the Complaint and the same are, therefore, denied.

24. The stated or implied allegations of wrongdoing by Defendant contained in paragraph 24 of the Complaint are denied. Except as denied, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 24 of the Complaint and the same are, therefore, denied.

25. The allegations contained in paragraph 25 of the Complaint state a legal conclusion to which no response is required by Defendant. To the extent a response is deemed required, the allegations contained in paragraph 25 of the Complaint are denied.

26. Denied, including all subparts.

27. Denied.

28. Denied.

29. Denied.

## Third Claim for Relief
## Unfair and Deceptive Trade Practices

30. Defendants' responses to the allegations of paragraphs 1-29 above are realleged and incorporated herein by reference as if fully set forth.

31. Admitted.

32. Denied, including all subparts.

33. Plaintiffs' allegations of Defendant's actions in paragraph 33 of the Complaint are denied. It is admitted that during the time period set forth in the Complaint, Defendant engaged in business in North Carolina affecting commerce.

34. Denied.

35. Denied.

36. Denied.

## **SECOND DEFENSE**

As a second and further defense, and without waiving any other defenses available to them, Plaintiffs' Complaint fails to state a claim for which relief may be granted against the Defendant and should be dismissed.

## **THIRD DEFENSE**

As a third and further defense, and without waiving any other defenses available to it, Defendant alleges that Plaintiffs are estopped from raising the claims contained in their Complaint, on the basis that Plaintiffs' claims arise out of work done by insurance broker David Adams ("Mr. Adams") on the Graphic Communications Local 8-M & 96-B Health and Welfare Plan account ("Graphic account"), since Plaintiffs had specifically instructed Defendant to pay Plaintiffs only a 1% commission, and pay Mr. Adams a 4% commission, in connection with Mr. Adams' work on the Graphic account. Despite Plaintiffs' subsequent representations to Defendant that Mr. Adams

had ceased performing work on the Graphic account, and, thus, was no longer entitled to receive 4% commissions, and that Plaintiffs should receive Mr. Adams' 4% commissions, Defendant is informed, and alleges upon information and belief, that Mr. Adams has continuously serviced and presently still services the Graphic account, and was and continues to be entitled to receive the 4% commissions for said work. Plaintiffs' claims against Defendant should be barred by the doctrine of estoppel.

## FOURTH DEFENSE

As a fourth and further defense, and without waiving any other defenses available to it, Defendant alleges that Plaintiffs have waived the right to assert the claims contained in their Complaint, on the basis that Plaintiffs' claims arise out of work done by Mr. Adams on the Graphic account, and Plaintiffs had specifically instructed Defendant to only pay Plaintiffs a 1% commission, and pay Mr. Adams a 4% commission, in connection with Mr. Adams' work on the Graphic account. Despite Plaintiffs' representations to Defendant that Mr. Adams had ceased performing work on the Graphic account, and, thus, was no longer entitled to receive 4% commissions, and that Plaintiffs should receive the 4% commissions, Defendant is informed, and alleges upon information and belief, that Mr. Adams has continuously serviced the Graphic account, and was and continues to be entitled to receive the 4% commissions for said work. Plaintiffs should be barred by the doctrine of waiver from asserting their claims against Defendant, since Defendant was paying Plaintiffs the 1% commissions on the Graphic account, pursuant to the commission schedule requested by Plaintiffs.

## FIFTH DEFENSE

As a fifth and further defense, and without waiving any other defenses available to it, Defendant alleges failure of consideration as a bar to Plaintiffs' claims against Defendant in this

action. As set forth in the allegations above, upon information and belief, Mr. Adams continues to service the Graphic account and, therefore, continues to be entitled to his 4% commission payment, pursuant to the instructions provided by Plaintiffs to Defendant.

## SIXTH DEFENSE

As a sixth and further defense, and without waiving any other defenses available to it, Defendant alleges accord and satisfaction as a bar to Plaintiffs' claims against Defendant in this action. As set forth in the allegations above, Defendant has paid Plaintiffs, and Plaintiffs have instructed Defendant to pay, and Defendant has accepted, the 1% commissions arising out of Mr. Adams' servicing of the Graphic account. Likewise, Defendant continues to pay Mr. Adams the 4% commissions for servicing the Graphic account, as instructed by Plaintiff.

## SEVENTH DEFENSE

As a seventh and further defense, and without waiving any other defenses available to it, Defendant alleges the course of dealing between Plaintiffs and Defendant as a bar to Plaintiffs' claims against Defendant. Pursuant to Plaintiffs' specific instructions, Defendant paid Plaintiffs a 1% commission, and Mr. Adams a 4% commission, in connection with Mr. Adams' servicing of the Graphic account. It was only after Plaintiffs erroneously represented, or willfully misrepresented, to Defendant that Mr. Adams no longer serviced the Graphic account, and that Defendant should pay the entire 5% commission to Plaintiffs, that Defendant stopped making a 4% commission payment to Mr. Adams. However, upon being contacted by Mr. Adams and informed that he was still servicing the Graphic account, and had been doing so continuously, Defendant resumed its 4% commission payments to Mr. Adams, and 1% commission payments to Plaintiffs on the Graphic account, and paid Mr. Adams his missed 4% commissions by deducting said amount from

Plaintiffs' 1% commissions on the Graphic account, pursuant to the course of dealing between the parties, and to do equity to Mr. Adams in keeping with Plaintiffs' original instructions.

### EIGHTH DEFENSE

As an eighth and further defense, and without waiving any other defenses available to it, Defendant has recently learned from the appropriate licensing agencies in North Carolina, Georgia, South Carolina, Kentucky, West Virginia and Nebraska that Plaintiffs are not licensed to solicit or negotiate stop loss insurance in North Carolina, Georgia, South Carolina, Kentucky, West Virginia and Nebraska, even though Plaintiffs have previously charged Defendant commissions from soliciting and negotiating stop loss insurance in each of the enumerated states. Defendant pleads Plaintiffs' lack of licenses as a bar to Plaintiffs' claims against Defendant.

### NINTH DEFENSE

As a ninth and further defense, and without waiving any other defenses available to it, Defendant pleads the unclean hands of Plaintiffs in obtaining commissions from the solicitation and negotiation of stop loss insurance without having an appropriate license as a bar to Plaintiffs' recovery of any sums of money from Defendant arising out of Plaintiffs' solicitation and negotiation of stop loss insurance.

### TENTH DEFENSE

As a tenth and further defense, and without waiving any other defenses available to it, Defendant pleads the illegality of Plaintiffs' receipt of commissions due to Plaintiffs' lack of licenses as a bar to Plaintiffs' claims against Defendant.

## ELEVENTH DEFENSE AND COUNTERCLAIM

Defendant and Counterclaim Plaintiff J. Allan Hall & Associates, Inc. ("Hall"), complaining of the Plaintiffs and counterclaim Defendants Marker & Associates, Inc. and Anne Marker McEntee (sometimes collectively "Marker"), alleges and says as follows:

### Jurisdiction

1. This Court has original jurisdiction in this Counterclaim action by virtue of 28 U.S.C. § 1332 and § 1441(b). This Counterclaim action involves diversity of citizenship and the amount of Defendant's Counterclaim exceeds the sum of $75,000.00, exclusive of interest and costs, and the Counterclaim involves, *inter alia*, questions of federal law under 18 U.S.C. § 1341, *et seq.*, and 18 U.S.C. § 1962, *et seq.*

2. Hall is a foreign corporation with its office and principal place of business in Indianapolis, Indiana. Hall is authorized to do business in North Carolina.

3. Marker & Associates, Inc. is a North Carolina corporation with its office and principal place of business in Wake County, North Carolina.

4. Anne Marker McEntee is a citizen and resident of Wake County, North Carolina and is neither an infant nor incompetent.

### Venue

5. 28 U.S.C. § 1332 and § 1441(b) confer original jurisdiction upon this Court over this Counterclaim since there is a diversity of citizenship among the parties, and the amount in controversy set forth in Defendant's Counterclaim exceeds the sum of $75,000.00, exclusive of interest and costs, and the Counterclaim dispute involves the aforesaid questions of federal law.

6. Venue is proper in the Eastern District of North Carolina in that individual and corporate Marker reside in the District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## Count One
## Fraud

7. Hall realleges and incorporates by reference paragraphs 1-6 of its Counterclaim as though fully set forth herein.

8. Prior to 1995, James F. McEntee, husband of Anne Marker McEntee and an officer and director of Marker, was a field representative for Stop Loss International Corporation ("SLI"), a managing general underwriter for stop loss insurers of self-insured health and welfare plans.

9. While working with SLI, and as a condition of his employment at SLI, James F. McEntee was licensed as an agent to solicit and negotiate stop loss insurance and related insurance coverages. While James F. McEntee worked at SLI, Mr. J. Allan Hall also worked at SLI as Senior Vice President, and the two men were business colleagues. Mr. J. Allan Hall knew that James F. McEntee was licensed as an agent to solicit and negotiate stop loss insurance and related insurance coverages at SLI, because all such field representatives of SLI were required to be licensed.

10. Mr. J. Alan Hall left the employment of SLI in 1993 and formed J. Allan Hall and Associates, Inc. James F. McEntee left the employment of SLI in 1995 and formed Marker & Associates, Inc. with his wife, Anne Marker McEntee. Thereafter, Marker began placing stop loss business with Hall in 1995.

11. Based on the fact that James F. McEntee had been licensed to solicit and negotiate stop loss insurance and related insurance coverages at SLI, Hall understood and believed that

James F. McEntee and Marker were licensed to solicit and negotiate stop loss insurance and related insurance coverages.

12. Marker requested that Hall make periodic advances of funds to help Marker become established as an independent broker of stop loss and related insurance coverages to solicit and negotiate such coverages.

13. Hall agreed to advance six thousand dollars ($6,000.00) per month to Marker in semi-monthly amounts of three thousand dollars ($3,000.00). Hall and Marker agreed that commissions earned by Marker on stop-loss brokerage would be applied to Marker's loans with Hall.

14. Since 1995 through the present, the total amount of commissions for stop-loss brokerage either paid to Marker by Hall, or credited to Marker's loan with Hall, is $358,376.97.

15. After Marker filed its lawsuit in this action, Hall learned for the first time from the appropriate licensing entities that Marker is not licensed in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska to solicit or negotiate stop-loss insurance or other related insurances, even though Marker had been soliciting, negotiating and brokering stop loss insurance in said states and charging Hall commissions for said stop-loss brokerage.

16. Marker's failure to obtain a license before soliciting and negotiating stop loss insurance and other related insurance coverages is in violation of N.C.Gen.Stat. § 58-33-26, *et. seq.*

17. Marker concealed a material fact by failing to disclose to Hall that it was not licensed to solicit and negotiate stop loss insurance or other related insurance coverages in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska. Marker should have disclosed its lack of licensing to Hall.

18. Marker's concealment that it was not licensed to solicit and negotiate stop loss insurance or other related insurance coverages in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska was reasonably calculated to deceive Hall.

19. Marker's concealment that it was not licensed to solicit and negotiate stop loss insurance or other related insurance coverages in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska was done with the intent to deceive Hall.

20. Hall was in fact deceived by Marker's concealment that it was not licensed to solicit and negotiate stop loss insurance or other related insurance coverages in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska, and Hall's reliance on Marker's concealment was reasonable based on the previous business dealings between James McEntee and J. Allan Hall while employed at SLI.

21. Hall suffered damages as a result of Marker's concealment that it was not licensed to solicit and negotiate stop loss insurance or other related insurance coverages in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska by paying commissions for stop-loss brokerage to Marker, or crediting Marker's loan with Hall, in the amount of $358,376.97.

22. Hall is therefore entitled to and hereby seeks judgment against Marker for the total sum of $358,376.97, plus interest from the date of each incremental payment of such sum, costs, and other such relief as this Court deems just and proper.

### Count Two
### Constructive Fraud

23. Hall realleges and incorporates by reference paragraphs 1 through 22 of its Counterclaim as though fully set forth herein.

24. A relationship of trust and confidence existed between Marker and Hall.

25. Marker used its position of trust and confidence with Hall to bring about the payment by Hall to Marker of commissions for stop-loss brokerage, or crediting Marker's loan with Hall, in the amount of $358,376.97, even though Marker was not licensed to solicit and negotiate stop loss insurance, or related insurance coverages. Said actions were done to the detriment of Hall and for the benefit of Marker.

26. Hall is therefore entitled to, and hereby seeks, judgment against Marker for the total sum of $358,376.97, plus interest from the date of each incremental payment of such sum, costs, and other such relief as this Court deems just and proper.

## Count Three
## Mail Fraud, 18 U.S.C. § 1341, *et seq*

27. Hall realleges and incorporates by reference paragraphs 1 through 26 of its Counterclaim as though fully set forth herein.

28. Marker willfully and knowingly participated in a scheme to defraud Hall by charging Hall commissions for stop-loss brokerage, even though Marker knew that it did not have a license to solicit and negotiate stop loss insurance, or any other related insurance coverages in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska, and even though Marker had not disclosed its lack of requisite licensing to Hall.

29. Marker charged Hall commissions for stop-loss brokerage with an intent to defraud Hall, since Marker knew that it did not have a license to solicit and negotiate stop loss insurance, or any other related insurance coverages in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska, and since Marker had not disclosed its lack of requisite licensing to Hall.

30. From 1995 onward, Marker continuously used the United States' mail for the purpose of executing its scheme to defraud Hall by charging Hall commissions for stop-loss

brokerage, even though Marker knew that it did not have a license to solicit and negotiate stop loss insurance, or any other related insurance coverages in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska, and even though Marker had not disclosed its lack of requisite licensing to Hall.

31. As a result of Marker's mail fraud, as described herein, Marker caused Hall to pay commissions to Marker for stop-loss brokerage, or credit Marker's loan with Hall, in the amount of $358,376.97, even though Marker was not licensed to solicit and negotiate stop loss insurance, or related insurance coverages, and even though Marker did not disclose its lack of licensing to Hall.

32. Marker's conduct, as alleged herein, violates 18 U.S.C. § 1341, *et seq*.

33. Hall is therefore entitled to and hereby seeks judgment against Marker for the total sum of $358,376.97, plus interest from the date of each incremental payment of such sum, costs, and other such relief as this Court deems just and proper.

### Count Four
### Violations of Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. 1962, *et seq*.

34. Hall realleges and incorporates by reference paragraphs 1 through 33 of its Counterclaim as though fully set forth herein.

35. Anne Marker McEntee, an individual, and Marker & Associates, Inc., a corporation, maintained an interest and control in and participated in an enterprise affecting interstate commerce through the mail fraud activities alleged herein. James F. McEntee was an officer and director in Marker &Associates, Inc. during the relevant time periods.

36. Marker's mail fraud, as alleged herein, constituted a pattern of racketeering activity by Marker.

37. Since 1995, Marker's mail fraud, as alleged herein, involved many more than two acts of racketeering activity. Since 1995, Marker has continuously used the United States mail for the purpose of executing its scheme to defraud Hall by charging Hall commissions for stop-loss brokerage, even though Marker knew that it did not have a license to solicit and negotiate stop loss insurance, or any other related insurance coverages, in North Carolina, South Carolina, Georgia, West Virginia, Kentucky or Nebraska, and even though Marker had not disclosed its lack of requisite licensing to Hall.

38. Marker's racketeering activities, as described herein, involve a series of related acts since 1995 that are ongoing and pose a threat of continued criminal activity.

39. As a result of Marker's racketeering activities, as described herein, Marker caused Hall to pay commissions unlawfully to Marker for stop-loss brokerage, or credit Marker's loan with Hall, in the amount of $358,376.97, even though Marker was not licensed to solicit and negotiate stop loss insurance, or related insurance coverages, and even though Marker did not disclose its lack of requisite licensing to Hall.

40. Marker's conduct, as alleged herein, violates 18 U.S.C. § 1962, *et seq*.

41. Hall is therefore entitled to and hereby seeks judgment against Marker for the principal sum of $358,376.97, the trebling of any damages awarded, plus interest from the date of each incremental payment of such sum, costs, and attorney's fees, and other such relief as this Court deems just and proper.

### Count Five
### Unfair and Deceptive Trade Practices

42. Hall realleges and incorporates by reference paragraphs 1 through 41 of its Counterclaim as though fully set forth herein.

43. The activities of Marker constituted unfair and deceptive acts or practices and were unfair methods of competition within the meaning of N.C. Gen. Stat. §75-1.1.

44. Such unfair acts, practices and methods include, without limitation, the charging of commissions to Hall for the solicitation and negotiation of stop-loss brokerage, even though Marker was not licensed to solicit and negotiate stop loss insurance, or related insurance coverages, and even though Marker did not disclose its lack of requisite licensing to Hall.

45. Marker has engaged and are engaging in unfair or deceptive acts or practices in the conduct of trade and commerce as an insurance broker and agent.

46. Marker committed the conduct described in this Counterclaim knowingly, intentionally and with reckless disregard to the rights of Hall.

47. Such unfair and deceptive acts, methods and practices by Marker related to the soliciting and negotiating of stop-loss insurance and were in or affecting commerce.

48. As a result of Marker's unfair and deceptive acts, methods and practices, Hall was proximately injured in its business. Marker caused Hall to pay commissions unlawfully to Marker for stop-loss brokerage, or credit Marker's loan with Hall, in the amount of $358,376.97, even though Marker was not licensed to solicit and negotiate stop loss insurance, or related insurance coverages, and even though Marker did not disclose its lack of requisite licensing to Hall.

49. As a result of Marker's unfair and deceptive acts, methods and practices, Hall is entitled to recover its attorneys' fees from Marker and to have any damages amount awarded against Marker trebled.

50. Hall is therefore entitled to and hereby seeks judgment against Marker for the principal sum of $358,376.97, the trebling of any damages awarded, plus interest from the date

of each incremental payment of such sum, costs, and attorney's fees, and other such relief as this Court deems just and proper.

## RESERVATION AND NON-WAIVER

Defendant reserves and does not waive any additional or further defenses as may be revealed by additional information that may be acquired in discovery or otherwise.

WHEREFORE, having fully responded to the allegations of the Complaint, and having asserted a Counterclaim, Defendant and Counterclaim Plaintiff J. Allan Hall & Associates, Inc. prays unto the Court as follows:

1. That Plaintiffs have and recover nothing of this Defendant;

2. That this Defendant be granted judgment on its Counterclaim against the Plaintiffs in the amount of $358,376.97, that the amount of damages be trebled for Plaintiffs' violations of 18 U.S.C. § 1962, *et seq.*, and N.C.Gen.Stat. §75-1.1, *et. seq.*, plus interest from the date of each incremental payment of such sum, costs, and attorney's fees;

3. That the costs of this action be taxed to the Plaintiffs;

4. That the Defendant and Counterclaim Plaintiff be granted a trial by jury on issues so triable; and

5. That the Court such other and further relief as it deems just and proper.

This the 26 day of August, 2002.

YOUNG, MOORE, AND HENDERSON P.A.

BY: _____
Jay P. Tobin
State Bar No. 17288
Attorneys for Defendant
And Counterclaim Plaintiff
 J. Allan Hall & Associates, Inc.
Post Office Box 31627
Raleigh, North Carolina 27622
Telephone: (919) 782-6860
Telefacsimile: (919) 782-6753

GARRISON & KIEFER, P.C.

Albert George, Of Counsel
Indiana State Bar No.: 7099-49
Attorneys for Defendant
And Counterclaim Plaintiff
 J. Allan Hall & Associates, Inc.
7351 Shadeland Station, Suite 201
Indianapolis, IN 46256
Telephone: (317) 842-8283
Telefacsimile: (317) 841-6036

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing Answer and Counterclaim upon the attorney shown below by depositing a copy of same in the United States mail, postage prepaid, addressed to said attorney.

This the 26 day of August, 2002.

YOUNG MOORE AND HENDERSON P.A.

BY: *Jay P. Tobin*
Jay P. Tobin
State Bar No. 17288
Attorneys for Defendant
And Counterclaim Plaintiff
J. Allan Hall & Associates, Inc.
Post Office Box 31627
Raleigh, North Carolina 27622
Telephone: (919) 782-6860
Telefacsimile: (919) 782-6753

Served on:

Donald G. Hunt, Jr., Esq.
AKINS, HUNT & FEARON, P.C.
Post Office Box 266
Fuquay-Varina, NC 27526
(919) 552-2020
Attorneys for Plaintiffs

448543/430280-001

STATE OF INDIANA

COUNTY OF MARION

VERIFICATION

J. Allan Hall, being first duly sworn, deposes and says that he is President and Chief Executive Officer with J. Allan Hall and Associates, Inc., and as such is duly authorized to execute this verification on its behalf; that he has read the foregoing Counterclaim and knows the contents thereof; and that the same are true to the best of his knowledge, information and belief.

This 23rd day of August, 2002.

_____
J. Allan Hall

Sworn to and subscribed before me, a Notary Public, this 23rd day of August, 2002.

_____
Notary Public

(NOTARIAL SEAL)

My commission expires: 2/15/2010